NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MARIA ISABEL AMARILLAS,
                    Petitioner,

  v.

PAMELA BONDI, Attorney General,

                    Respondent.

No.    24-4258

Agency No. A205-552-121

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 20, 2025[**]
Phoenix, Arizona

Before:  TALLMAN, BADE and LEE, Circuit Judges

    Maria Isabel Amarillas, a native and citizen of Mexico, seeks review of the

Board of Immigration Appeals' ("BIA") decision affirming an Immigration Judge's

("IJ") denial of her application for cancellation of removal.  The BIA affirmed the

IJ's finding that Amarillas failed to show exceptional and extremely unusual

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

hardship to her two qualifying children: R.S. and I.A.S.[1]  We have jurisdiction under 8 U.S.C. § 1252 and deny Amarillas' petition for review.

"[T]he application of the exceptional and extremely unusual hardship standard to a given set of facts is reviewable as a question of law under [8 U.S.C.] § 1252(a)(2)(D)." *Wilkinson v. Garland*, 601 U.S. 209, 217 (2024).  "Where the BIA adopts and affirms the IJ's decision with further reasoning," as it did here, "this court reviews both the decision of the IJ and the BIA." *Alcaraz-Enriquez v. Garland*, 19 F.4th 1224, 1229 n.2 (9th Cir. 2021).  We review the application of the "exceptional and extremely unusual hardship standard to a given set of facts . . . for substantial evidence." *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th Cir. 2025).

To establish "exceptional and extremely unusual hardship," an applicant must demonstrate a qualifying relative would suffer hardship that is "out of the ordinary and exceedingly uncommon;" in other words, the hardship "must deviate, in the extreme, from the norm." *Gonzalez-Juarez*, 137 F.4th at 1006.  "The agency must

---

[1] Under 8 U.S.C. § 1101(b)(1), a "child is" an "unmarried person under twenty-one years of age."  At the time of the BIA's decision, Amarillas had two qualifying children—R.S. and I.A.S. Days before the Government submitted its responsive brief, however, one of Amarillas' children, R.S., turned 21 years old. Even if R.S. were considered a qualifying child, despite reaching the statutory age limit, Amarillas' claim would nonetheless fail because she has not established that her removal would cause R.S. to suffer exceptional and extremely unusual hardship. *See Gonzalez-Juarez*, 137 F.4th at 1006.

compare the hardship in a given case to the hardship that results in the usual, ordinary course when an alien is removed." *Id.*

Amarillas intends to bring her qualifying children to Mexico if removed. She argues the BIA failed to consider the age of her children, the difference in the quality of education between the two countries, one child's special education needs, and removal's disruption of the children's relationship with their father. The record does not support Amarillas' claims.

The BIA acknowledged her qualifying children were "15 and 8 years old" at the time of the IJ's merits hearing, and that the IJ reasoned that because of the children's "young ages, they will be able to easily adjust to life in Mexico and become acclimated." The BIA also observed "the youngest child has a learning disability" but noted there was no evidence the child "receives consistent education assistance or that such services would not be available" in Mexico. Additionally, the IJ noted the child's learning disability was discovered "only about a month" before the merits hearing, and there was "no clear treatment plan" at the time. Accordingly, substantial evidence supports the agency's conclusion that Amarillas' children will not be deprived of any special education assistance that would give rise to extremely unusual hardship.

To the extent Amarillas relies on the general differences in the quality of education provided by the United States and Mexico to show hardship, her argument

3

fails because such a condition would apply "equally to a large proportion of removal cases" and therefore cannot deviate, in the extreme, from the norm. *See Gonzalez-Juarez*, 137 F.4th at 1007-08 ("[A] country conditions report that applies equally to a large proportion of removal cases does not compel the conclusion that the hardship test is met.").

The IJ also considered whether Amarillas could financially support her children and found that "nothing in the record established [Amarillas] cannot obtain work in Mexico to continue to provide for her family." Indeed, Amarillas admitted she could "probably" return to the cookie factory where she once worked and would likely be able to live with relatives.

Finally, Amarillas is correct that the IJ and BIA did not discuss in detail the impact of removal on the children's relationship with their father, who she claims intends to remain in the United States. But that is because Amarillas failed to offer evidence that the children have a close personal relationship (or any relationship) with their father, are financially dependent on him, or that the father would be unable to continue to send financial assistance to his children while he remains in the United States. The record includes a few references to the children's father including a 2007 letter from one child's pediatrician to another specialist, which mentions offhandedly that the father is currently in Mexico due to his lack of lawful immigration status, and a 2008 medical record on which an Arizona address is listed

4

for the father.  This evidence, however, does not compel the conclusion the hardship test is met.[2]

**PETITION DENIED**.

---

[2] Amarillas argues the agency erred by failing to apply *In re Gonzales-Recinas*, 23 I. & N. Dec. 467 (BIA 2002).  While the agency's decision may be instructive to our analysis, the facts of that case are distinguishable. *See id.* at 471.